UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SIROB IMPORTS INC.,                                   Case No. 2:19-cv-00314 (PKC)(CLP)

                       Plaintiff,

      -against-

MOUNT VERNON FIRE INSURANCE
COMPANY,

                       Defendant.
----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

LAW OFFICE OF MITCHELL J. WINN, PLLC
Attorneys for Plaintiff Sirob Imports Inc.
585 Stewart Avenue, Suite 544
Garden City, New York 11530
(t)  (516) 635-6300
(f)  (516) 626-0565
winnlaw@msn.com

On the Brief
Mitchell J. Winn, Esq. (MW6966)

## TABLE OF AUTHORITIES

**Cases**

Ace Wire & Cable Co. v. Aetna Casualty & Surety Company, 60 N.Y.2d 390, 469 N.Y.S.2d 655,
457 N.E.2d 761 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

American National Fire Ins. Co. v. Mirasco, Inc., 249 F.Supp.2d 303, 318 (S.D.N.Y. 2003) . . . . . . . . .12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed2d 202 (1986) . . . . . . . . . 3

Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 818 N.Y.S.2d 176, 850 N.E.2d 1152, (2006) . . . . .8, 9

Baughman v. Merchant Mutual Ins. Co., 87 N.Y.2d 589, 593, 640 N.Y.S.2d 857, 858,
663 N.E.2d 898 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 205 (1986) . . . . . . . . . . . . . . . 3

CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 77 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . .9

Cragg v. Allstate Indem. Corp., 17 N.Y.3d 118,122, 926 N.Y.S.2d 867, 950 N.E.2d 500 (2011) . . . . . . . .9

Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co., CV-09-1640 (DLI)(VVP),
2012 U.S. Dist. LEXIS 45592, 2012 WL 1077448, at *9 (E.D.N.Y. Mar. 9, 2012)
*report and recommendation adopted*, 2012 U.S.Dist. LEXIS 45652, 2012 WL 1078994
(E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

First Investors Corp. v. Liberty Mutual Ins. Co., 152 F.3d 162, 167 (2d Cir. 1998). . . . . . . . . . . . . . . 12

Fitzpatrick v. American Honda Motor Corp., 78 N.Y.2d 66, 70, 571 N..Y.S.2d 672,
575 N.E.2d 90 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fulmont Mut. Ins. Co. v. N. Y. Central Mut. Fire Ins. Co., 4 A.D.3d 724, 772 N.Y.S.2d 406
(3d Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co., 215 Ill.2d 146, 828 N.E.2d 1092,
1102 (Sup. Ct. Ill. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

General Star Indem. Co. v. Driven Sports, Inc., 80 F. Supp. 3d 442, 450, 462 (E.D.N.Y. 2015) . . . . . . .10

Guevara et al v. Sirob Imports, Inc., et al, 15 cv-02895(DRH)(GRB) . . . . . . . . . . . . . . . . . . . . . . . . . .1

Handelsman v Sea Ins. Co., 85 N.Y.2d 96, 623 N.Y.S.2d 750, 647 N.E.2d 1258 (1994). . . . . . . . . . . . .11

Hartford Fire Ins. Co. v. Mitlof, 208 F.Supp.2d 407, 412 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . 11

Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293 (2d Cir. 1987),
*cert. denied*, 484 U.S. 1042, 108 S.Ct. 774 (1988)). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002) . . . . . . . 11

M.D.W. Enterprises, Inc. v. CNA Ins. Co., 4 A.D.3d 338, 340, 772 N.Y.S.2d 79, 82 (2d Dept. 2004). . .11

Morgan Stanley Group, Inc. v. New England Ins. Co., 225 F.3d 270, 274 (2d Cir. 2000) . . . . . . . . . . . . 11

Moshiko, Inc. v. Seiger & Smith, 137 A.D.2d 170, 175, 529 N.Y.S.2d 284, 288 (1st Dept. 1988),
*affd.*, 72 N.Y.2d 945, 533 N.Y.S.2d 52, 529 N.E.2d 420 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

Nat'l Sur. Corp. v. Immunex Corp., 297 P.3d 688, 695, 176 Wn.2d 872 (Wash. 2013) . . . . . . . . . . . . . . 9

Sea Ins. Co. v. Westchester Fire Ins. Co., 51 F.3d 22, 26 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . .9

State of New York v. Home Indem. Co., 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 971,
486 N.E.2d 827 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

United States ex rel. Romano v. N.Y. Presbyterian, 426 F.Supp.2d 174, 177 (S.D.N.Y. 2006) . . . . . . . . .3

Vargas v. Ins. Co. of N. Am., 651 F.2d 838, 839-40, (2nd Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

White v. Cont'l Cas. Co., 9 N.Y.3d 264, 267, 878 N.E.2d 1019, 848 N.Y.S.2d 603 (2007) . . . . . . . . . . .10

**Statutes**

Fair Labor Standards Act ("FLSA"), 29 USC 201 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 4, 5, 8

New York Labor Law §§ 650 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NYLL § 663 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

12 NYCRR §142-2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

12 NYCRR §142-2.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 6

12 N.Y.C.R.R. §142-2.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

New York Labor Law §195. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 8

New York Labor Law §198. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 8

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

N.Y. Labor Law Article 6, § 191 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

## PRELIMINARY STATEMENT

At the present time, Plaintiff SIROB (hereinafter "Plaintiff" or "SIROB"), being sued in a class action in the Eastern District of New York action entitled <u>Guevara et al v. Sirob Imports, Inc., et al</u>, 15 cv-02895(DRH)(GRB) (hereinafter the "underlying action"). Plaintiff's liability insurance carrier, Defendant MOUNT VERNON FIRE INSURANCE COMPANY (hereinafter "MOUNT VERNON" or "Defendant"), agreed to defend Plaintiff under a reservation of rights, asserting a $100,000.00 sub-limit of coverage as to its defense and/or indemnity obligations as to the underlying class action, based upon its endorsement for actions based upon the federal Fair Labor Standards Act ("FLSA"), 29 USC 201 *et seq*. In the present action, Plaintiff seeks a declaration that its liability insurance carrier, should not be permitted to assert this sub-limit of coverage.

## STATEMENT OF FACTS

It is undisputed that the underlying action sets forth five separate counts seeking relief. A copy of the Amended Complaint in the underlying action is annexed as Exhibit "G" to the Joint Statement of Undisputed Facts (Exhibit "1" to the Declaration of Mitchell J. Winn). The Amended Complaint pleads five causes of action, only the first of which is based upon the Fair Labor Standards Act, as follows:

> "First Count: Overtime Wages under the Fair Labor Standards Act 29 U.S.C. §§ 201, et seq. (29 U.S.C. §§ 207 & 216);
> Second Count: Overtime Wages under Article 19 of the New York Labor Law §§ 650 et seq.
> (NYLL § 663 and N.Y. Compilation of Codes, Rules, and Regulations § 142-2.2*);*
> Third Count: Straight Wages Under NYLL § 191;
> Fourth Count: Spread of Hours Pay Pursuant to 12 NYCRR §§142-2.4 and 142-2.18;
> Fifth Count: Wage Notice Violations under NYLL §195 and 198"

By letter dated December 21, 2017 (Exhibit "I" to the Joint Stipulation of Undisputed Material Facts, a copy of which is annexed to the accompanying Declaration of Mitchell J. Winn as Exhibit "1"), Defendant reserved its rights to limit its obligation to defend and indemnify Plaintiff pursuant to its Fair Labor Standards Act [hereinafter "FLSA"] Sub-Limit Endorsement, as follows:

1

> "The Complaint seeks unpaid overtime and liquidated damages under the
> FLSA and NYLL, unpaid straight pay and spread of hours pay and
> liquidated damages under the NYLL, penalties for wage notice violations;
> pre-judgment interest, and reasonable attorneys' fees and costs.
> 	We acknowledge that Policy No. EPL2551030D (The Policy") provides
> Employment Practices Coverage for policy period 07/30/2017 to
> 07/30/2018 with limits of $1,000,000 each claim, $1,000,000 in the
> aggregate, and subject to retention of $5,000 each claim. This claims made
> policy has full prior acts coverage.
> 	Because a violation of Fair Labor Standards Act has been alleged and a
> Claim, as defined under the Policy has been made, a defense has been
> triggered for Sirob Imports, Inc., Nick Boboris and Peter Boboris under the
> Policy. Please refer to the Policy (EPLJ NY 01/12), which is amended to
> include the Fair Labor Standards Act Sub-Limit Endorsement (EPL 162
> NY 03-13) . . ."

No other defenses, *e.g.* lack of prompt notice, were asserted in MOUNT VERNON's reservation of rights letter.

Defendant's reservation of rights letter attempts to shoehorn the allegations of the Amended Complaint in the underlying action within their $100,000.00 FLSA sub-limit endorsement.  That endorsement provides, *inter alia*, as follows:

> "The $100,000 Sub-Limit of Liability shall be the maximum liability for
> Loss and Defense Costs from all Claims for actual or alleged violations of
> the Fair Labor Standards Act, amendments thereto or provisions of any
> similar federal, state or local law regulating minimum wage, working
> hours, overtime, child labor, record keeping and other matters regulated
> under the federal Fair Labor Standards Act."

to "any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under [the FLSA]."  Only the first and second causes of action in the underlying action are concerned with matters specified in the subject endorsement.  However, MOUNT VERNON argues that the other allegations in the Amended Complaint are based on New York State law provisions which are "similar" to the subjects regulated under the FLSA, a contention which Plaintiff disputes.  Plaintiff then commenced the present action seeking a declaration that it is entitled to complete coverage from MOUNT VERNON for its defense and possible indemnity

2

for all costs and expenses incurred in the underlying action, and that the $100,000.00 sub-limit of coverage applies only to the portion of the subject action based upon alleged violation(s) of the Fair Labor Standards Act.

## ARGUMENT

### POINT I    THE SUMMARY JUDGMENT STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper only if "there is no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed2d 202 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 248. An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* The burden of proving that no issue of material fact exists falls upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 205 (1986).

To prevail, the movant must "demonstrate the absence of a genuine issue of material fact . . . ." The burden is then on the non-moving party to set forth specific facts raising a genuine issue of fact for trial." United States ex rel. Romano v. N.Y. Presbyterian, 426 F.Supp.2d 174, 177 (S.D.N.Y. 2006), quoting Celotex Corp. v. Catrett, 477 U.S. at 323-324. The undisputed facts of this case support a finding of summary judgment in favor of Plaintiff.

### POINT II -    THE ALLEGATIONS IN THE UNDERLYING ACTION ARE NOT "SIMILAR" TO THE PROVISIONS OF THE FLSA

Under the terms of MOUNT VERNON's endorsement, the $100,000.00 limit applies to "actual or alleged violations of the Fair Labor Standards Act, amendments thereto or provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act." The question at issue

3

herein is, therefore, are the allegations of the Amended Complaint in the underlying action "similar" to the matters regulated under the FLSA.

The FLSA covers the minimum wage (29 USC 206), maximum hours (29 USC 207), collection of data (29 USC 211), child labor (29 USC 212), employment under special certificates (29 USC 214), prohibited acts (e.g. retaliation) (29 USC 215), notice to employees of access to a Health Exchange under the Affordable Care Act (29 USC 218-b), protection of employees for receiving a credit under the Affordable Care Act or for reporting a violation thereof (29 USC 218-c). None of these are similar to the Third, Fourth or Fifth counts in the underlying action.

The First Count of the Amended Complaint in the underlying action, seeking overtime wages, is obviously concerned directly with a violation the FLSA, 29 USC 207 ("Maximum Hours") which provides, *inter alia*, as follows:

> "(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
> (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
> (2) No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, and who in such workweek is brought within the purview of this subsection by the amendments made to this Act [29 USCS §§ 201 et seq.] by the Fair Labor Standards Amendments of 1966--
> (A) for a workweek longer than forty-four hours during the first year from the effective date of the Fair Labor Standards Amendments of 1966 ,
> (B) for a workweek longer than forty-two hours during the second year from such date, or
> (C) for a workweek longer than forty hours after the expiration of the second year from such date,

> *unless such employee receives compensation for his employment in excess of the hours above specified at a not less than one and one-half times the regular rate at which he is employed.*" [emphasis added]

The Second Count is also concerned with overtime wages. This is a topic specified in the endorsement, and although based on New York State law, it is a subject regulated by the FLSA, *to wit* 29 USC 207, and so the allegedly violated New York State law is "similar" to that of the FLSA, and within the sub-limit endorsement.

However, the "Straight Wages" allegation in the Third Count, the "Spread of Hours" allegation of the Fourth Count, and the "Wage Notice" allegation of the Fifth Count are not specified in the sub-limit endorsement, nor are they subjects covered under the FLSA, or similar to those covered by the FLSA.

A.      Straight Wages is not a topic covered by the FLSA

The Third Count of the underlying action claims that SIROB violated New York Labor Law §191, by not paying Plaintiffs in that action and the New York Class "at their regular rates for all hours worked up to forty (40) hours in a workweek. New York Labor Law §191 provides, in relevant part, as follows:

> "**Labor Law Article 6 - Payment Of Wages**
>
> **§ 191 Frequency Of Payments.**
> 1. Every employer shall pay wages in accordance with the following provisions:
> a. Manual worker. (i) A manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned; provided however that a manual worker employed by an employer authorized by the commissioner pursuant to subparagraph (ii) of this paragraph or by a non-profitmaking organization shall be paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly."

Although the FLSA does provide for a federal minimum wage (FLSA §206), there is no provision of the FLSA which is analogous to Labor Law §191, in requiring that employees be paid

5

according to their employment contracts. This is uniquely a matter of state law, and so is not "similar" to anything under the FLSA. As such, the Third Count of the underlying action should not be subject to MOUNT VERNON's proffered limiting endorsement.

B.     Spread of Hours is not a topic covered by the FLSA

The Fourth Count of the underlying action claims that SIROB violated Article 12 of the New York Code of Rules and Regulations Law §§142-2.4 and 2.18, governing "spread of hours." These regulations provide as follows:

> "§142-2.4 Additional rate for split shift and spread of hours.
> An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:
> (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or
> (c) both situations occur.
>
> § 142-2.18 Spread of hours.
> The *spread of hours* is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty."

There is no analogue to this regulation under the FLSA. The "spread of hours" for employees is uniquely a matter of state law, and so is not "similar" to anything under the FLSA. As such, the Fourth Count of the underlying action should also not be subject to MOUNT VERNON's proffered limiting endorsement.

C.     Wage Notice Violations is not a topic covered by the FLSA

The Fifth Count of the underlying action claims that SIROB violated New York Labor Law §§195 and 198. These sections provide, *inter alia*, as follows:

> "Labor Law  Article 6 - Payment Of Wages
> § 195 Notice And Record-Keeping Requirements. Every employer shall:
> 1. (a) provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice

6

containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. . . .
2. notify his or her employees in writing of any changes to the information set forth in subdivision one of this section, at least seven calendar days prior to the time of such changes, unless such changes are reflected on the wage statement furnished in accordance with subdivision three of this section;
3. furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed; . . .
6. notify any employee terminated from employment, in writing, of the exact date of such termination as well as the exact date of cancellation of employee benefits connected with such termination. . . ."

" Labor Law  Article 6 - Payment Of Wages
§ 198   1-b. If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-five of this article, he or she may recover in a civil action damages of fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars, together with costs and reasonable attorney's fees. The court may also award other relief, including injunctive and declaratory relief, that the court in its discretion deems necessary or appropriate. . . ."

The New York statute sued upon in the Fifth Count of the underlying action, New York Labor Law §§195 and 198, is clearly directed toward notices of the wage payments. While the FLSA does provide for notices to employees, this requirement is not directed toward wages, but rather to employee rights under the Affordable Care Act (29 USC §218-b), and to child labor being allowed only by special certificates issued by the Secretary of Labor (for, e.g., students) (29 USC §214). Again, the New York state law relied upon in the underlying action is clearly not at all "similar" to anything under the FLSA. The Fifth Count to the underlying action should not, therefore, be subject to the $100,000.00 limiting endorsement in MOUNT VERNON's policy.

**POINT III -   THE COST OF DEFENSE OF THE UNDERLYING ACTION CANNOT BE DISTINGUISHED BETWEEN CLAIMS THAT ARE SUBJECT TO THE $100,000.00 LIMITING ENDORSEMENT AND THOSE THAT ARE NOT SUBJECT THERETO**

Defendant MOUNT VERNON's chosen counsel is defending Plaintiff, and upon information and belief they have not, and upon information and belief cannot, distinguish their time spent and expenses between its defense of the various separate counts of the underlying action. Indeed, any attempt to do so would be a conflict of interest on their part, unless MOUNT VERNON now wishes to allow Plaintiff to designate its own chosen defense counsel.

The obligation to defend under a liability policy is based upon the face of the underlying complaint. It is beyond ken that three of the counts are not covered by the limiting endorsement. Moreover, limiting endorsements are be interpreted in the most limited manner possible, so as to maximize Plaintiff's coverage.

> "An insurer's duty to defend is 'exceedingly broad,' and ***the insurer 'will be called upon to provide a defense whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage.'*** [emphasis added] Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 850 N.E.2d 1152, 818 N.Y.S.2d 176 (2006) (internal quotation marks and citation omitted). When an insurer seeks to avoid the duty to defend based on an

8

exclusion, the insurer 'must demonstrate that the allegations of an underlying complaint place that pleading solely and entirely within the exclusions of the policy and that the allegations are subject to no other interpretation.' CGS Indus., Inc. v. Charter Oak Fire Ins. Co., 720 F.3d 71, 77 (2d Cir. 2013) (internal quotation marks and citation omitted). In other words, '[a]n insurer seeking to avoid its obligation to defend an insured on the basis of a policy exclusion bears a 'heavy burden' . . . . [to] establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.' Sea Ins. Co. v. Westchester Fire Ins. Co., 51 F.3d 22, 26 (2d Cir. 1995) (internal quotation marks and citations omitted). 'As with questions concerning coverage, questions concerning exclusions from coverage are assessed by examining the allegations in the claims asserted.' Dollar Phone Corp. v. St. Paul Fire & Marine Ins. Co., CV-09-1640 (DLI)(VVP), 2012 U.S. Dist. LEXIS 45592, 2012 WL 1077448, at *9 (E.D.N.Y. Mar. 9, 2012) *report and recommendation adopted*, 2012 U.S.Dist. LEXIS 45652, 2012 WL 1078994 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 514 F. App'x 21 (2d Cir. 2013). . . .

   To hold otherwise would risk eroding the well-established doctrine under New York law of imposing an 'exceedingly broad' duty to defend on insurers. Cook, 7 N.Y.3d at 137. New York law recognizes that 'a provision for defense of suits is useless and meaningless unless it is offered when the suit arises,' Fitzpatrick [v. American Honda Motor Corp., 78 N.Y.2d 66, 70, 571 N..Y.S.2d 672, 575 N.E.2d 90 (1991)] (internal quotation marks and citation omitted), and thus requires an insurer to 'come forward to defend its insured no matter how groundless, false or baseless the suit may be.' *Id*. (internal quotation marks and citation omitted). As it operates now, this rule incentivizes an insured to seek coverage, but if insurers can threaten the later collection of costs, an insured's incentives would change drastically, and he would be faced with a 'Hobson's choice' in any close case. In other words, an insured whose claim *might* be covered could be dissuaded from seeking coverage out of concern that the legal costs would be so prohibitive that the insured could never pay them if a court later disagreed. *See* [Nat'l Sur. Corp. v. Immunex Corp., 297 P.3d 688, 695, 176 Wn.2d 872 (Wash. 2013)] (*citing* [General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co., 215 Ill.2d 146, 828 N.E.2d 1092, 1102 (Sup. Ct. Ill. 2005)]). Thus, the insured would lose the benefit of his bargain with the insurer, which the insured struck believing that the insurer was obligated to defend him, at least initially, even in the most borderline cases. A judicial alteration of that contractual balance, without any Policy language justifying such an outcome—and, in fact, with Policy language promising that the insurer will pay all expenses—is contrary to the 'reasonable expectations of the average insured,' Cragg [v. Allstate Indem. Corp., 17 N.Y.3d 118,122, 926 N.Y.S.2d 867, 950 N.E.2d 500 (2011)]and to the related principle in New York law that '[i]f the terms of a policy are ambiguous . . . any ambiguity must be construed in favor of

9

the insured and against the insurer.' White v. Cont'l Cas. Co., 9 N.Y.3d 264, 267, 878 N.E.2d 1019, 848 N.Y.S.2d 603 (2007)."

General Star Indem. Co. v. Driven Sports, Inc., 80 F. Supp. 3d 442, 450, 462 (E.D.N.Y. 2015) (Bianco, J.).

Under these circumstances, Plaintiff is entitled to a full and complete defense, irrespective of the proffered $100,000.00 sub-limiting FLSA endorsement.

### POINT IV - AMBIGUITY IN THE FLSA SUB-LIMIT ENDORSEMENT TERM "SIMILAR" MUST BE CONSTRUED IN FAVOR OF COVERAGE

Plaintiff contends that the Third, Fourth and Fifth Counts of the Amended Complaint in the underlying action are not "similar" to any provisions of the FLSA. It is true that the question of what is similar may be debated. However, what cannot be debated is that the term "similar" is not defined in the subject policy. Copies of the subject policy and policy renewals are annexed to the Joint Stipulation of Undisputed Material Facts as Exhibits "A" through "E." The "Definitions" section which appears in each policy renewal, at Section III of the Employment Practices Liability Insurance Coverage Form (form EPLJ NY (01-12)) at pp. 1 to 3 of 11, does not mention what is meant by the term "similar." The Fair Labor Standards Act Sub-Limit Endorsement in the policies (form EPL 162 NY (03-13) also does not define the term.

What also cannot be debated is that the term "similar" is, by its very nature, vague and ambiguous. Nor was it understood by the Plaintiff. *See* the accompanying Declaration of Plaintiff's president, Nick Boboris. As such, applying that term must be done in the manner which most favors full coverage for the insured's claim.

It is not required that the insured offer an exclusive or even the most persuasive interpretation of the policy provisions as applied to the facts of a case in order for it to claim ambiguity on a motion for summary judgment. Rather, the carrier bears the burden of proving that its analysis of policy

10

provisions, such as exclusions or limitations, as applied to the facts, is the only reasonable interpretation. Vargas v. Ins. Co. of N. Am., 651 F.2d 838, 839-40, (2nd Cir. 1981). If there is more than one reasonable interpretation of the terms as applied to the facts, the terms must be ambiguous. *See* M.D.W. Enterprises, Inc. v. CNA Ins. Co., 4 A.D.3d 338, 340, 772 N.Y.S.2d 79, 82 (2d Dept. 2004); *see also* Hartford Fire Ins. Co. v. Mitlof, 208 F.Supp.2d 407, 412 (S.D.N.Y. 2002); International Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83 (2d Cir. 2002); Morgan Stanley Group, Inc. v. New England Ins. Co., 225 F.3d 270, 274 (2d Cir. 2000); State of New York v. Home Indem. Co., 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 971, 486 N.E.2d 827 (1985).

As contracts of adhesion, insurance policies are unique because the terms contained within the policies are not normally negotiated. Accordingly, it is well settled that any ambiguities are to be interpreted against the insurer and in favor of the insured. Ace Wire & Cable Co. v. Aetna Casualty & Surety Company, 60 N.Y.2d 390, 469 N.Y.S.2d 655, 457 N.E.2d 761 (1983); Moshiko, Inc. v. Seiger & Smith, 137 A.D.2d 170, 175, 529 N.Y.S.2d 284, 288 (1st Dept. 1988), *affd.*, 72 N.Y.2d 945, 533 N.Y.S.2d 52, 529 N.E.2d 420 (1988). "The starting point in interpreting an insurance policy is to determine whether the policy terms are ambiguous." Hartford Fire Ins. v. Mitlof, 208 F.Supp.2d at 412 (quoting Ingersoll Milling Mach. Co. v. M/V Bodena, 829 F.2d 293 (2d Cir. 1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 774 (1988)). Further, "an ambiguous provision in an insurance policy is construed most favorably to the insured and most strictly against the insurer." *Id.* at 319; *See* Handelsman v Sea Ins. Co., 85 N.Y.2d 96, 623 N.Y.S.2d 750, 647 N.E.2d 1258 (1994).

In a situation akin to that at bar, where a policy exclusion did not specify the exact condition to be excluded, the Court in Fulmont Mut. Ins. Co. v. N. Y. Central Mut. Fire Ins. Co., 4 A.D.3d 724, 772 N.Y.S.2d 406 (3d Dept. 2004), granted the insured's motion for summary judgment while denying the carrier's cross-motion for summary judgment.

11

> Since it is settled that exclusionary clauses must be specific and clear in order to be enforced and that defendant failed to satisfy its burden of establishing the meaning it now attributes to this disputed clause as being subject to no other reasonable interpretation, plaintiff's motion for summary judgment should have been granted and defendant required to provide coverage. *Id.*

Fulmont, 4 A.D.3d at 726, 772 N.Y.S.2d at 408.

When interpreting terms in policies of insurance, the language at issue shall be construed, "as would the ordinary [person] on the street or ordinary person when he [or she] purchases and pays for insurance, or, in a case such as this one involving a policy issued to a business, by examining the reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract." First Investors Corp. v. Liberty Mutual Ins. Co., 152 F.3d 162, 167 (2d Cir. 1998). *See* American National Fire Ins. Co. v. Mirasco, Inc., 249 F.Supp.2d 303, 318 (S.D.N.Y. 2003); Baughman v. Merchant Mutual Ins. Co., 87 N.Y.2d 589, 593, 640 N.Y.S.2d 857, 858, 663 N.E.2d 898 (1996).

Under this standard, there is no way that an ordinary business person, such as the owners of Plaintiff, could have understood that the allegations of the Amended Complaint in the underlying action would be subject to the FLSA sub-limit endorsement.

## **CONCLUSION**

Accordingly, the Plaintiff's summary judgment motion should be granted, and the relief requested in Plaintiff's Verified Complaint seeking a declaration of coverage without the FLSA sub-limit endorsement, and such other further and different relief as may be deemed just, proper and equitable, in its entirety.

Dated:  June 28, 2019
         Garden City, New York

12

Respectfully Submitted,

LAW OFFICE OF MITCHELL J. WINN, PLLC
Attorneys for Plaintiff SIROB IMPORTS, INC.

By: _____
       MITCHELL J. WINN (MW6966)
585 Stewart Avenue, Suite 544
Garden City, NY 11530
(516) 721-2945

To: GOLDBERG SEGALLA, LLP
Attorneys for Defendant MOUNT VERNON FIRE INSURANCE COMPANY
200 Garden City Plaza, Suite 520
Garden City, NY 11530
(516) 281-9800