UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SIROB IMPORTS INC.,

                Plaintiff,

         - against -

MOUNT VERNON FIRE INSURANCE
COMPANY,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-314 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

Plaintiff Sirob Imports Inc. seeks a declaratory judgment that Defendant Mount Vernon Fire Insurance Company must cover and defend a Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") lawsuit brought against Plaintiff beyond the $100,000 sub-limit coverage contained in the endorsement to Plaintiff's employment practices liability insurance policy with Defendant. Plaintiff and Defendant now cross-move for summary judgment. (Dkts. 18, 20.) For the reasons set forth below, the Court grants Defendant's motion for summary judgment and denies Plaintiff's cross-motion.

## BACKGROUND

### I. Undisputed Facts[1]

On July 29, 2013, Defendant issued an employment practices liability insurance policy (the "Policy") and a "Fair Labor Standards Act Sub-Limit Endorsement" (the "Endorsement") to

---

[1] The Court draws the following facts from the parties' submissions on their cross-motions, including their Joint Stipulation of Undisputed Material Facts. (Joint Stipulation of Undisputed Material Facts ("56.1 Statement"), Dkt. 20-3.) Any citation to the 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

Plaintiff for the period of July 30, 2013 to July 30, 2014. (56.1 Statement, Dkt. 20-3, ¶ 1; Exhibit A, Dkt. 20-3, at ECF[2] 6.) The Policy and the Endorsement were then renewed several times to cover the period from July 30, 2014 to July 30, 2018. (56.1 Statement, Dkt. 20-3, ¶¶ 2–5.) Paragraph I.A. of the Policy provides that Defendant

> will pay on behalf of [Plaintiff] Loss in excess of the Retention[3] not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that [Plaintiff] shall become legally obligated to pay because of Claims first made against [Plaintiff] during the Policy Period . . . for Wrongful Acts . . . .

(Exhibit A, Dkt. 20-3, at ECF 9.) "Claim" is defined as "(1) any written notice received by [Plaintiff] that any person or entity intends to hold [Plaintiff] responsible for a Wrongful Act; or (2) any proceeding initiated against [Plaintiff] . . . seeking to hold [Plaintiff] responsible for a Wrongful Act . . . ." (*Id.*) "Wrongful Act" is defined as "any actual or alleged act" of discrimination, harassment, retaliation, wrongful termination, workplace tort, or other specifically prescribed violations. (*Id.* at ECF 11.) "'Workplace Tort' means any actual or alleged employment-related: (1) misrepresentation; or (2) negligent supervision, training or evaluation; or (3) wrongful discipline; or (4) wrongful deprivation of a career opportunity; or (5) failure to enforce written policies and procedures relating to a Wrongful Act." (*Id.*) Exclusion B(9) of the Policy provides that Defendant shall not be liable to make payment

> in connection with any Claim made against [Plaintiff] arising out of, directly or indirectly resulting from or in consequence of, or in any way involving . . . (9)

---

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] "Retention" is "similar to a deductible." *Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, No. 14-CV-48 (AJN), 2016 WL 4467548, at *1 (S.D.N.Y. Aug. 22, 2016); *see also Pettibone v. WB Music Corp.*, No. 17-CV-2569 (RJS), 2018 WL 1441395, at *4 n.2 (S.D.N.Y. Mar. 21, 2018) ("[I]n the insurance context, the terms retention and deductible . . . are used interchangeably." (internal quotation marks and citation omitted)), *vacated and remanded on other grounds*, 767 F. App'x 145 (2d Cir. 2019). Under the Policy, the Retention is $5,000. (Exhibit A, Dkt. 20-3, at ECF 8.)

actual or alleged violations of the Fair Labor Standards Act, any amendments thereto, or any similar provisions of any federal, state or local law[ ](except the Equal Pay Act); or improper wages or wage disputes due to misclassification of Employees as exempt or non[]exempt; or misrepresentation involving any Employee's status as exempt or nonexempt.

(*Id.* at ECF 12.)

The Endorsement provides that

[Defendant] will pay on behalf of [Plaintiff] a sub-limit of liability of $100,000 in excess of the Retention for all Loss and Defense Costs combined that [Plaintiff] shall become legally obligated to pay because of Claims first made against [Plaintiff] during the Policy Period . . . for any actual or alleged violation of the federal Fair Labor Standards Act, any amendments thereto, or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act including misclassification of or misrepresentation to Employees under these laws. This sub-limit does not apply to or restrict the Limit of Liability . . . for Claims alleging violations of the Equal Pay Act.

(*Id.* at ECF 20.) The Endorsement amends the definition of "Wrongful Act" in the Policy to include "violation of the federal Fair Labor Standards Act, any amendments thereto, or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act[.]" (*Id.*) The Endorsement also deletes Exclusion B(9) "in its entirety for purposes of coverage provided by this endorsement only." (*Id.*)

On May 19, 2015, two of Defendant's employees, Edgar Guevara and Lorena M. Guevara, individually and on behalf of various classes, filed a federal lawsuit against Plaintiff and its owners, Nick Boboris and Peter Boboris (the "Sirob Defendants") in this district (the "Liability Action"). (56.1 Statement, Dkt. 20-3, ¶ 6.) The operative complaint in the Liability Action asserts claims for overtime wages under the FLSA (Count I), overtime wages under the NYLL (Count II), straight wages under the NYLL (Count III), spread of hours pay under the NYLL (Count IV), and wage notice violations under the NYLL (Count V). (Exhibit G, Dkt. 20-3, at ECF 128–31.) Upon

3

notification of the Liability Action, Defendant agreed in a letter dated December 21, 2017 to defend the Sirob Defendants, subject to a reservation of rights. (56.1 Statement, Dkt. 20-3, ¶ 9.)

## II. Procedural History

Plaintiff commenced this action on January 16, 2019, requesting a declaratory judgment that Defendant is liable for the Liability Action beyond the $100,000 of coverage in the Endorsement. (Complaint, Dkt. 1.) Plaintiff and Defendant then cross-moved for summary judgment. The parties' motions were fully briefed on August 9, 2019. (Dkts. 18, 20.) The Court heard oral argument on the parties' cross-motions on February 13, 2020. (*See* Feb. 13, 2020 Minute Entry.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (stating that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The initial "burden of establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (*per curiam*) (citation omitted). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in

support of the non-moving party is insufficient; "there must be evidence on which the jury could reasonably find for the non-movant." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks, citation, and alterations omitted). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation marks, citation, and emphasis omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted). "The same standard of review applies when the court is faced with cross-motions for summary judgment." *Lauria v. Heffernan*, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009) (internal quotation marks and citation omitted). When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

Defendant argues that the five claims in the Liability Action are covered by the Endorsement and are therefore subject to the $100,000 limit. (Defendant's Memorandum of Law, ("Def.'s Br."), Dkt. 18-5, at 13–22.) Plaintiff argues that the NYLL claims set forth in Counts III-

5

V[4] of the Liability Action are not covered by the Endorsement, but are covered by the Policy. (Plaintiff's Memorandum in Support ("Pl.'s Br."), Dkt. 20-4, 3–8.) The parties agree that there are no material facts in dispute and that resolution of this case by summary judgment is appropriate. (*See* 56.1 Statement, Dkt. 20-3; *see also* Def.'s Br., Dkt. 18-5, at 12.)

"In New York,[5] insurance policies are interpreted according to general rules of contract interpretation." *Am. Commercial Lines LLC v. Water Quality Ins. Syndicate*, 679 F. App'x 11, 13 (2d Cir. 2017) (summary order) (internal quotation marks and citation omitted). "[A]ll writings which form part of a single transaction and are designed to effectuate the same purpose must be read together, even though they were executed on different dates and were not all between the same parties." *Madeleine, L.L.C. v. Casden*, 950 F. Supp. 2d 685, 695 (S.D.N.Y. 2013) (internal quotation marks, citation, and alteration omitted). "[I]n construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013) (internal quotation marks, citation, and alteration omitted).

"[A]n insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Nat'l Union Fire Ins. Co. v. Travelers Indem. Co.*, 210 F. Supp. 2d 479, 485 (S.D.N.Y. 2002) (quoting *Village of Sylvan Beach v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)). "An unambiguous provision of the contract should be given its plain and ordinary meaning and the contract should be construed without reference to extrinsic

---

[4] Although Count II also sets forth a NYLL claim seeking overtime wages, Plaintiff does not argue that Count II is covered by the Policy, as opposed to the Endorsement.

[5] The parties do not dispute that the Policy and Endorsement are subject to New York law. (Pl.'s Br., Dkt. 20-4, at 8–12 (citing New York law); Def.'s Br., Dkt. 18-5, at 12 (same).)

6

evidence." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks and citation omitted). "Words and phrases in a contract are to be given their plain meaning and the contract is to be construed to give full meaning and effect to all of its provisions." *Am. Commercial Lines LLC*, 679 F. App'x at 14 (internal quotation marks and citation omitted). "Courts must avoid interpretations that render contract provisions meaningless or superfluous." *Madeleine*, 950 F. Supp. 2d at 695 (internal quotation marks and citation omitted).

"[W]hether the language of a contract is unambiguous and, if so, what construction is proper," are questions of law. *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992) (citations omitted); *accord Am. Commercial Lines LLC*, 679 F. App'x at 14 ("The initial interpretation of the contract and whether its terms are ambiguous are questions of law for the court to decide." (citation omitted)). "Contract language is not ambiguous unless it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract." *Nat'l Union Fire*, 210 F. Supp. 2d at 485 (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 152 (2d Cir. 1995)).

> If a court concludes a provision in an insurance contract is ambiguous, it may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract. If the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract interpretation, including New York's rule of *contra proferentem*,[6] according to which ambiguity should be resolved in favor of the insured.

*Olin Corp.*, 704 F.3d at 99 (citations omitted).

"Under New York law, the insured bears the burden [] of establishing coverage under a policy . . . ." *Uvino v. Harleysville Worcester Ins. Co.*, 708 F. App'x 16, 20 (2d Cir. 2017)

---

[6] "The entire Latin expression of this rule is: '*Verba chartarum fortius accipiunter contra proferentem*.' This expression translates into English as: 'Contract terms will be most strongly interpreted against the drafter.'" *Balanoff v. 83 Maiden L.L.C.*, No. 98-CV-6442 (RPP), 2000 WL 16947, at *8 n.3 (S.D.N.Y. Jan. 10, 2000).

7

(summary order); *accord Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000) ("It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." (collecting cases)). Once the insured establishes coverage, "[the] insurer bears the burden of proving that an exclusion applies." *Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012).

**I.  The Policy Does Not Provide Coverage for NYLL Claims**

Plaintiff argues that Counts III-V of the Liability Action, which allege NYLL claims, are not covered by the Endorsement, but rather are covered by the Policy as claims for a "wrongful act."[7] Plaintiff's reasoning is that, because the Policy provides coverage for any "actual" wrongful act, if the Liability Action complaint alleges facts "that can bring the matter within" the definition of one of the wrongful acts—even if no claim for this act is asserted—the Policy provides coverage for the entire action. Based on this interpretation of the Policy, Plaintiff argues that the complaint's allegations that the two employees bringing the Liability Action were terminated establish an "actual" wrongful or retaliatory termination, and that the Policy therefore covers the Liability Action. (Plaintiff's Response, Dkt. 20-7, at 9–10.) The Court disagrees.

The language of the Policy is clear. The Policy provides coverage for *claims*, not for any tort that might be asserted based on the allegations in the complaint. The coverage provision of the Policy, Paragraph I.A., plainly states that Defendant

> will pay on behalf of [Plaintiff] Loss in excess of the Retention not exceeding the Limit of Liability shown on the Policy Declarations for which this coverage applies that [Plaintiff] shall become legally obligated to pay because of *Claims* first made against [Plaintiff] during the Policy Period . . . for Wrongful Acts[.]

---

[7] As previously discussed, the Policy defines a "Wrongful Act" as "any actual or alleged act" of discrimination, harassment, retaliation, wrongful termination, workplace tort, or other specifically prescribed violations. (Exhibit A, Dkt. 20-3, at ECF 11.)

(Exhibit A, Dkt. 20-3, at ECF 9 (emphasis added).) The term "claim" is clearly defined in the Policy as "any written notice" or "any proceeding" "seeking to hold [Plaintiff] responsible for a Wrongful Act" (*id.*), which includes an "actual or alleged act" (*id.* at ECF 11). Plaintiff relies on this definition of wrongful act, which includes both "actual or alleged" acts, and attempts to distinguish "actual" from "alleged" acts by defining the former as being established by any collection of facts that could be "proven during the litigation of the underlying action" and the latter being based on the claims actually raised, or "alleged," in the lawsuit.[8] (Plaintiff's Response, Dkt. 20-7, at 10.) This interpretation, on its face, is nonsensical and not supported by anything in the Policy.[9] It would make no sense for Defendant to issue a policy where the scope of coverage depended on a legal analysis of all claims a plaintiff *might* be able to bring, where that plaintiff has failed to do so or indicate an intent to do so. That is why Paragraph I.A. of the Policy limits coverage to "*Claims* first made against [Plaintiff]", and the Policy defines "Claims" as "any written notice received by [Plaintiff] that any person or entity intends to hold [Plaintiff] responsible for a Wrongful Act[,] or any proceeding initiated against [Plaintiff] seeking to hold [Plaintiff] responsible for a Wrongful Act[.]" (Exhibit A, Dkt. 20-3, at ECF 9 (emphasis added); *id.* (stating that Defendant "will pay on behalf of [Plaintiff] Loss . . . that [Plaintiff] shall become legally obligated to pay because of Claims first made against [Plaintiff] during the Policy Period . . . .")

---

[8] This is, at least, the Court's best understanding of Plaintiff's argument. Furthermore, the Court notes that Plaintiff's argument does not appear to be based on the fact that the definition of "Workplace Tort" also refers to an "actual or alleged" tort, including misrepresentation, negligent supervision, training or evaluation, wrongful discipline, wrongful deprivation of a career opportunity, and failure to enforce written policies and procedures relating to a Wrongful Act. (56.1 Statement, Dkt. 20-3, at ECF 9–10.) However, even if this other reference to an "actual" tort were part of Plaintiff's argument, the result would be the same.

[9] Indeed, the logical interpretation of the Policy's use of the terms "actual" and "alleged" in Paragraph III.S. is to indicate that all wrongful act *claims* brought against Defendant are covered, regardless of whether they prove to be meritorious ("actual") or not ("alleged").

*See Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 14-CV-7134 (VM), 2015 WL 4940126, at *5 (S.D.N.Y. Aug. 10, 2015) ("[A] contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." (internal quotation marks and citations omitted)). It is this critical language in Paragraphs I.A. and III.B. that Plaintiff ignores and that dooms his argument that Counts III-V of the Liability Action are covered under the Policy because the complaint contains factual allegations that could establish a "Wrongful Act," even though no such claim has been made.

The Court also finds that Defendant has no obligation under the Policy to indemnify or defend Plaintiff with respect to any of the five claims in the Liability Action. Though Plaintiff points to factual allegations in the complaint about the two lead plaintiffs being terminated from their employment, there is no claim in the Liability Action for wrongful termination or the failure to enforce policies or procedures relating to the same.[10] Therefore, the Liability Action does not assert a claim for a Wrongful Termination or a Workplace Tort, and Defendant has no obligation to indemnify or defend Plaintiff in connection with the Liability Action under the Policy. *Cf. Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82–83 (2d Cir. 2006) ("[A] defense obligation may be avoided only where there is no possible factual or legal basis on which an insurer's duty to indemnify under any provision of the policy could be held to attach." (internal quotation marks and citation omitted)).

---

[10] Furthermore, the complaint in the Liability Action merely alleges that the two employees bringing the action were terminated on a certain date and does not contain any allegations suggesting that those terminations were wrongful or retaliatory. (*See* Exhibit G, Dkt. 20-3, at ECF 124–26.) More specifically, the complaint does not allege that the plaintiffs were terminated in retaliation for complaining about the FLSA and NYLL violations alleged in the Liability Action. (*See id.* at ECF 124–26.) Mere speculation that the plaintiffs in the Liability Action could or might seek to amend their complaint to bring claims covered by the Policy is insufficient to bring the Liability Action within the coverage of the Policy.

Plaintiff's other arguments fail as well. Plaintiff argues that the complaint alleges, as a violation of NYLL, the Sirob Defendants' failure to properly calculate employee hours and failure to provide notice of wage statements, "which could be potentially construed as a covered 'failure to enforce written policies and procedures relating to any Wrongful Act[.]'" (Plaintiff's Response, Dkt. 20-7, at 10.) This argument again ignores the plain language of the Policy. Not every act that is "wrongful" in the colloquial sense is a "Wrongful Act." Rather, the Policy specifically defines "Wrongful Act" as an act of discrimination, harassment, retaliation, wrongful termination, or workplace tort (which, in turn, is defined as misrepresentation; negligent supervision, training or evaluation; wrongful discipline; wrongful deprivation of a career opportunity; or failure to enforce written policies and procedures relating to a Wrongful Act). (Exhibit A, Dkt. 20-3, at ECF 11.) The failure to properly calculate hours and provide wage notices has nothing to do with a failure to enforce written policies or procedures relating to any of these acts, and thus this NYLL claim does not trigger coverage under the Policy.

Plaintiff's argument also ignores the Policy's explicit exclusion of coverage for "actual or alleged violations of the Fair Labor Standards Act, any amendments thereto, or any similar provisions of any federal, state or local law," set forth in Exclusion B(9) of the Policy. (*Id.* at ECF 12.) At oral argument, Plaintiff's counsel argued, in part, that the exclusion provision in the Policy would have no meaning if FLSA and NYLL claims had not been covered under the Policy. The Court disagrees; rather, the Court finds that the exclusion was added for the purpose of eliminating any ambiguity—such as Plaintiff is attempting to create here—regarding the lack of coverage for these claims. "It is not surprising that a document, especially one drafted by an insurance company, would use a 'belt and suspenders' approach, using definitional language to avoid inclusion of coverage and also adding language of exclusion." *Citizens Ins. Co. v. Risen Foods,*

*LLC*, 880 F.3d 73, 79 (2d Cir. 2018).  Under such circumstances, "there [is] no coverage by reason of lack of inclusion."  *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 154 (2d Cir. 2010) (internal quotation marks and citation omitted).[11]

Lastly, the Court rejects Plaintiff's argument that Exclusion B(9)'s reference to "violations of the Fair Labor Standards Act, any amendments thereto, or any *similar* provisions of any federal, state or local law" (Exhibit A, Dkt. 20-3, at ECF 12 (emphasis added)) does not cover NYLL violations, because the NYLL provides for these causes of action, whereas the FLSA does not. The Court finds, as discussed *infra*, that there is no ambiguity in the Policy's use of the term "similar" in Exclusion B(9) to encompass all of the various federal, state and local laws that, like the FLSA, impose wage-and-hour requirements.

Thus, the Court finds that the Policy, by its plain and unambiguous terms, disclaims coverage for the Liability Action, in which only FLSA and NYLL claims have been brought.

## II.   The Endorsement Provides Coverage for FLSA and NYLL Claims

Based on the language of the Policy and the Endorsement, when read together, it is also plain that the Endorsement supplements the Policy with limited coverage for FLSA and other labor law claims, which are otherwise not covered by the Policy.  The Endorsement does this by: (1) deleting from the Policy Exclusion B(9), which disclaims coverage, in relevant part, for "violations

---

[11] Plaintiff argues that Defendant failed to preserve the defense that the Policy does not afford coverage in Defendant's December 21, 2017 letter, in which Defendant agreed to defend Plaintiff subject to a reservation of rights.  (Plaintiff's Response, Dkt. 20-7, at 9.)  However, "the waiver doctrine is inapplicable if the issue is the existence or non-existence of coverage.  If the rule were otherwise, the insured would be allowed to extend its coverage beyond what was originally bargained for."  *Nat'l Union Fire Ins. Co.*, 210 F. Supp. 2d at 485 (internal quotation marks and citations omitted); *accord NGM Ins. Co.*, 593 F.3d at 154 ("[T]here was no coverage 'by reason of lack of inclusion,' and thus no notice of disclaimer was required." (internal quotation marks and citation omitted)).  Because Defendant's argument is the non-existence of coverage under the Policy, the waiver doctrine is inapplicable.

of the Fair Labor Standards Act . . . or any similar provisions of any federal, state or local law" (Exhibit A, Dkt. 20-3, at ECF 12); (2) providing coverage of up to $100,000 for "any actual or alleged violation of the federal Fair Labor Standards Act, . . . or the provisions of any similar federal, state or local law regulating minimum wage, working hours, overtime, child labor, record keeping and other matters regulated under the federal Fair Labor Standards Act" (*id*. at ECF 20); and (3) adding these FLSA and other related violations to the definition of Wrongful Acts in the Policy (*id.*).

Although the language used in Exclusion B(9) and the Endorsement to describe the scope of the FLSA and related claims varies slightly, it is clear that, read in tandem, the Endorsement provides what the Policy disclaims and that the two provisions are intended to be coterminous. Notably, Exclusion B(9) and the Endorsement specify certain FLSA-type claims using similar terminology. (*Compare* Exclusion B(9), Exhibit A, Dkt. 20-3, at ECF 12 (disclaiming coverage for "improper wages or wage disputes due to misclassification of Employees as exempt or non[]exempt; or misrepresentation involving any Employee's status as exempt or nonexempt"), *with* the Endorsement, Exhibit A, Dkt. 20-3, at ECF 20 (providing coverage for claims of "misclassification of or misrepresentation to Employees under [FLSA and similar] laws").) Furthermore, both Exclusion B(9) and the Endorsement expressly exclude from coverage Equal Pay Act claims. (*Id.* at ECF 12, 20.) The clear intent of each provision is, on the one hand, to exclude coverage in the Policy for labor law claims authorized by the FLSA and similar federal, state, and local labor laws, and, on the other hand, to provide limited coverage in the Endorsement for the same types of FLSA and other labor law claims. Thus, the differences in the language used in Exclusion B(9) and the Endorsement to describe the scope of disclaimer/coverage are

13

immaterial, and do not contradict the plain and unambiguous reading of the scope of these provisions as being coterminous.

The Court next finds that all of the Liability Action's claims, alleging FLSA and NYLL violations, are covered under the Endorsement. In its motion briefing, Plaintiff argued that, because the NYLL claims in Counts III-V do not have a counterpart under the FLSA, they are not "similar" to FLSA claims and thus are not covered by *either* the Endorsement *or* Exclusion B(9). (Pl.'s Br., Dkt. 20-4, at 5–8; Plaintiff's Response, Dkt. 20-7, at 3.) At oral argument, however, Plaintiff changed its position and agreed that, if the Court finds that the NYLL claims are not covered by the Policy, then such claims are covered by the Endorsement. Although Plaintiff's concession moots the question of whether the Endorsement covers the claims in the Liability Action, given the Court's finding that Counts III-V are not covered by the Policy, the Court nonetheless sets forth its analysis of this issue and its finding that the Endorsement does, in fact, cover all of the claims, including the NYLL claims in Counts III-V, in the Liability Action.

The NYLL is "the state analogue" to the FLSA, *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015) (internal quotation marks and citation omitted), and it "mirrors the FLSA in most aspects," *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012). Thus, generally speaking, the NYLL regulates similar matters to the FLSA.

Here, even though the Endorsement uses "similar" as a shorthand reference to the myriad of federal, state, and local laws that, like the FLSA, regulate labor matters, the Endorsement also specifies some of those common areas of regulation, *e.g.*, "minimum wage, working hours, overtime, child labor, record keeping and other matters." (Exhibit A, Dkt. 20-3, at ECF 20.) In fact, Counts III-V of the Liability Action are based on NYLL provisions that regulate employee compensation, which is not only a central component of the FLSA, but is also expressly included

in the Endorsement's description of "similar" state labor law provisions—*i.e.*, those regulating minimum wage, overtime, and record keeping—covered by the Endorsement.

Plaintiff argues that the Endorsement's use of the word "similar" is ambiguous and should be interpreted in favor of the insured to mean that the FLSA and the NYLL provisions must function in a similar way for the NYLL claims to be covered by the Endorsement.[12] (Pl.'s Br., Dkt. 20-4, at 10–12.) However, in this context, the Court finds no ambiguity in the word "similar" as referring to the "state analogue" of the FLSA, given the largely co-extensive scope of FLSA and NYLL regulations, and the Endorsement's listing of "similarly" regulated matters, which includes the NYLL claims in the Liability Action.[13]

Therefore, the Court finds that the Endorsement provides coverage up to the limit of $100,000 for all of the FLSA and NYLL claims alleged in the Liability Action.

## CONCLUSION

For the reasons stated above, the Court grants Defendant's motion for summary judgment and denies Plaintiff's cross-motion. Plaintiff's complaint is dismissed with prejudice. The Clerk of Court is respectfully directed to enter judgment and close the case.

---

[12] Ironically, an interpretation favoring Plaintiff as the insured would appear to be one granting broader, not no, coverage as to the NYLL claims under the Endorsement. However, the Court addresses this argument in the context of Plaintiff's overarching position that coverage exists for the NYLL claims under the Policy rather than under the Endorsement.

[13] Plaintiff objects, both in its brief and at oral argument, to Defendant's reliance on *Payless Shoesource, Inc. v. Travelers Cos., Inc.*, 585 F.3d 1366 (10th Cir. 2009), and *Admiral Ins. Co. v. Kay Auto. Distribs., Inc.*, 82 F. Supp. 3d 1175 (C.D. Cal. 2015), for the proposition that similar exclusion clauses in employment practices liability insurance policies exclude claims under both the FLSA and state law. The Court finds both cases factually distinguishable and does not rely on them. In turn, Plaintiff relies on *Cal. Dairies Inc. v. RSUI Indem. Co.*, 617 F. Supp. 2d 1023 (E.D. Cal. 2009), which found with respect to an exclusion clause that the phrase, "similar provisions" of state law, refers to only those provisions regulating the same matters as the FLSA. However, *Cal. Dairies* is inapposite, because the court there was examining an exclusion clause, whereas the Court here is examining the existence of coverage.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2020
      Brooklyn, New York